2008 UT 62

**Troy Michael KELL, Petitioner and Appellant,**

v.

**STATE of Utah, Respondent and Appellee.**

**No. 20070234.**

Supreme Court of Utah.

Sept. 5, 2008.

914

Aric Cramer, St. George, for petitioner.

Mark L. Shurtleff, Att'y Gen., Thomas Brunker, Christopher D. Ballard, Asst. Att'ys Gen., Salt Lake City, for respondent.

PARRISH, Justice:

## INTRODUCTION

¶ 1 Petitioner Troy Kell appeals the dismissal of his petition for post-conviction relief. Specifically, Kell challenges the holding that some of his claims were procedurally barred under the Post–Conviction Remedies

1. More detailed accounts of the homicide can be found in *State v. Kell*, 2002 UT 106, ¶¶ 2–6, 61 P.3d 1019, and *State v. Daniels*, 2002 UT 2, ¶¶ 4–9, 40 P.3d 611.

2. Kell raised twelve claims of error on direct appeal:
   (1) the trial court erred ... by trying him in a courtroom located inside a prison; (2) the trial court violated his constitutional right to a fair trial by denying him an impartial jury in its rulings on voir dire; (3) the trial court erred by failing to instruct the jury on the theory of imperfect self-defense manslaughter; (4) the trial court erred by requiring jurors to view a videotape of the homicide; (5) multiple evidentiary errors individually and cumulatively deprived him of a fair trial; (6) the prosecutors violated his rights ... by making improper arguments to the jury; (7) the trial court erred

Act ("PCRA") because either they were previously raised on direct appeal or they could have been raised on direct appeal but were not. Additionally, Kell challenges the post-conviction court's entry of summary judgment in favor of the State on all claims that were not procedurally barred. We affirm.

## BACKGROUND

¶ 2 Troy Kell was convicted of murder and sentenced to life without parole in Nevada. Pursuant to an interstate compact, Kell was transferred to the Utah State Prison in June 1993. In March 1994, Kell was transferred to the Central Utah Correctional Facility ("CUCF").

¶ 3 In July 1994, Kell stabbed fellow inmate Lonnie Blackmon to death in the CUCF.[1] Due to security concerns, the district court held Kell's trial "in a regular courtroom located inside the CUCF." *State v. Kell*, 2002 UT 106, ¶ 7, 61 P.3d 1019. A jury found Kell guilty of aggravated murder and sentenced him to death. *Id.* ¶ 9. Kell appealed,[2] and we affirmed the conviction and sentence. *Id.* ¶ 64.

¶ 4 Pursuant to the PCRA, Kell filed a preliminary petition for post-conviction relief in May 2003 to challenge his conviction and sentence. Kell filed an "Amended Petition for Post Conviction Relief and/or Writ of Habeas Corpus" ("Amended Petition") in August 2005. In the Amended Petition, Kell raised numerous claims related to the jury selection process, the fairness of the trial proceedings, ineffective assistance of trial

during the penalty phase by forbidding the jury to consider mercy and sympathy as mitigating factors; (8) the victim impact evidence admitted in the penalty phase and the Utah statute that allows it[ ] are unconstitutional; (9) Section 76–5–202 of the Utah Code, which describes the aggravating factors necessary for capital murder, is unconstitutionally vague on its face; (10) the Utah death penalty statutes are unconstitutional because they do not narrow the class of death-eligible murders ...; (11) the capital sentencing proceedings were flawed; and, (12) because [Kell] had already been disciplined through the prison's disciplinary proceedings, the subsequent trial violated state and federal constitutional double jeopardy provisions.
*Kell*, 2002 UT 106, ¶ 10, 61 P.3d 1019.

counsel, and ineffective assistance of appellate counsel.

¶ 5 In November 2005, the State filed a "Motion to Dismiss and for Partial Summary Judgment." The State moved to dismiss Kell's post-conviction claims that had been previously litigated on direct appeal or that could have been raised on direct appeal but were not, arguing they were procedurally barred under the PCRA. The State also sought summary judgment on Kell's other claims but, in an apparent oversight, failed to specifically request summary judgment on claims 17(b) and 18(b).

¶ 6 In January 2007, the post-conviction court issued a memorandum decision granting the State's motion. The post-conviction court also entered summary judgment in favor of the State on claims 17(b) and 18(b), stating that the State's failure to request summary judgment on those claims was possibly "an oversight." While the court granted the State's motion without qualification, the court did not specifically mention Kell's claim 12 anywhere in its opinion, even though the State had specifically requested summary judgment on that claim.[3] The court's memorandum decision dismissed Kell's Amended Petition and stated that the ruling in the memorandum decision was the final order of the court and that no further orders were necessary.

¶ 7 Kell appeals the post-conviction court's decision. We have jurisdiction pursuant to Utah Code section 78A–3–102(3)(i) (Supp. 2008).

### STANDARD OF REVIEW

¶ 8 " 'We review an appeal from an order dismissing or denying a petition for post-conviction relief for correctness without deference to the lower court's conclusions of law.' " *Taylor v. State*, 2007 UT 12, ¶ 13, 156 P.3d 739 (quoting *Gardner v. Galetka*, 2004 UT 42, ¶ 7, 94 P.3d 263).

### ANALYSIS

### I. THE POST–CONVICTION COURT'S MEMORANDUM DECISION WAS A FINAL ORDER

¶ 9 After briefs were filed with this court and after oral arguments were held, Kell challenged the jurisdiction of this court. Kell contends that the post-conviction court's failure to specifically address claim 12 in its memorandum decision robbed its decision of the finality necessary to qualify the decision as a final appealable order under rule 3 of the Utah Rules of Appellate Procedure. We disagree.

¶ 10 Generally, appeals to this court may be taken only from final orders or judgments.[4] *Salt Lake City Corp. v. Layton*, 600 P.2d 538, 539 (Utah 1979); *see also* Utah R.App. P. 3(a). If a judgment is not final, "we lack jurisdiction over the appeal and must dismiss it." *Powell v. Cannon*, 2008 UT 19, ¶ 12, 179 P.3d 799. "A judgment is final when it ends the controversy between the parties litigant." *Layton*, 600 P.2d at 539. Generally, a judgment will not be considered final and appealable if it resolves fewer than all of the claims pending in an action. *Id.* at 539–40.

¶ 11 In this case, we conclude that the post-conviction court's memorandum decision was a final judgment resolving all of Kell's claims for post-conviction relief. While the memorandum decision did not provide any specific analysis regarding why the post-conviction court was dismissing claim 12, the court clearly stated that it was granting the State's motion to dismiss and for partial summary judgment without qualification. In the State's motion, the State sought to dismiss

---

**3.** Claim 12 alleged that Kell's right to a fair trial was violated when the trial court denied his motion for a change of venue and that trial and appellate counsel were ineffective for failing to challenge the trial court's denial of Kell's motion for a change of venue.

**4.** There are three exceptions that allow parties to appeal nonfinal orders in certain circumstances: (1) when a statute allows for the appeal of nonfinal orders, (2) "when a party obtains permission from the appellate court to appeal an interlocutory order pursuant to rule 5 of Utah Rules of Appellate Procedure," and (3) "when the district court certifies an order as final under rule 54(b) of the Utah Rules of Civil Procedure." *Powell v. Cannon*, 2008 UT 19, ¶ 13, 179 P.3d 799. None of these exceptions is at issue in this case.

some of Kell's claims as procedurally barred and sought summary judgment on Kell's other claims, including claim 12. Thus, while the court did not specifically mention claim 12 in its memorandum decision, the claim was rejected when the court granted the State's motion in its entirety. Although post-conviction courts should enumerate and explain their reasoning for denying or granting a motion for summary judgment on each requested claim, we conclude that the failure to do so is not reversible error.

¶ 12 Because the court granted the State's motion in its entirety, thereby disposing of all of Kell's claims, we hold that the decision was a final appealable order under rule 3 of the Utah Rules of Appellate Procedure. Accordingly, we have jurisdiction over this appeal.

## II. THE POST–CONVICTION COURT CORRECTLY DISMISSED KELL'S CLAIMS THAT HAD BEEN PREVIOUSLY RAISED AND REJECTED ON DIRECT APPEAL

■ ¶ 13 "The PCRA affords a convicted defendant the opportunity to have his conviction and sentence vacated or modified under certain circumstances." *Lafferty v. State*, 2007 UT 73, ¶ 44, 175 P.3d 530. A petition for post-conviction relief "is not a substitute for appellate review," but only "a collateral attack on a conviction or sentence." *Taylor v. State*, 2007 UT 12, ¶ 14, 156 P.3d 739. Under the PCRA, a convicted defendant is not eligible for relief on claims that were "raised or addressed" on direct appeal. Utah Code Ann. § 78–35a–106(1)(b) (2002); *Lafferty*, 2007 UT 73, ¶ 44, 175 P.3d 530 ("Claims that were brought on direct appeal are ineligible for consideration in post-conviction actions.").

¶ 14 The post-conviction court dismissed five of Kell's claims on the grounds that they had been previously raised and rejected on direct appeal and were, therefore, procedurally barred under the PCRA.[5] Kell argues that these claims should not have been dismissed (1) because the PCRA contains an exception for ineffective assistance of counsel and (2) because his conviction was obtained in violation of the federal and state constitutions. We disagree with Kell's assertions and conclude that the post-conviction court correctly dismissed the claims.

### A. Ineffective Assistance of Counsel

■ ¶ 15 Kell first attempts to overcome the PCRA's procedural bar by arguing that subsection (2) of section 78–35a–106 provides an avenue for him to re-raise before the post-conviction court the five claims previously raised on appeal. Subsection (2) provides that "[n]otwithstanding Subsection 1(c), a person may be eligible for relief on a basis that the ground could have been but was not raised at trial or on appeal, if the failure to raise that ground was due to ineffective assistance of counsel." Utah Code Ann. § 78–35a–106(2). Kell argues that his appellate counsel ineffectively presented the issues to this court on direct appeal and that he consequently should be allowed to re-raise them before the post-conviction court under subsection (2).

¶ 16 Kell's argument fails under the plain language of the PCRA. Because subsection (2) begins with the language "[n]otwithstanding Subsection 1(c)," it is clear that subsection (2) is an exception only to subsection (1)(c).[6] *Id.* Subsection (2) does not modify or make exception to subsection (1)(b), which bars claims "raised or addressed ... on appeal." *Id.* § 78–35a–106(1)(b). Thus, Kell's reliance on alleged ineffective assistance of

---

5. Claim 8 asserts that the trial court denied Kell a fair and impartial trial by trying him inside the CUCF. Claim 10 asserts that the trial court violated Kell's rights by removing two potential jurors for cause based upon their reluctance to impose the death penalty. Claim 11 asserts that the trial court violated Kell's rights by denying Kell's "for cause" challenges to five prospective jurors. Claim 14 asserts that the trial court violated Kell's right to a fair trial by admitting the videotape of the homicide. Claim 15(b) asserts that the trial court violated Kell's right to a fair trial by admitting the autopsy report.

6. Subsection (1)(c) provides that a person is not eligible for post-conviction relief on any claim that "could have been but was not raised at trial or on appeal." Utah Code Ann. § 78–35a–106(1)(c).

counsel to avoid the "raised or addressed" procedural bar is misplaced.

¶ 17 Additionally, we note that Kell's claims were considered by this court in *State v. Kell*, 2002 UT 106, 61 P.3d 1019, after Kell was given an opportunity to be heard. We presume that this court gave full consideration to the claims, regardless of whether Kell's counsel raised them in the most effective manner. We therefore reject Kell's attempt to avoid the procedural bar to claims previously raised on appeal by claiming ineffective assistance of counsel.

### B. Constitutional Violations

¶ 18 Kell also asserts that under Utah Code section 78–35a–104, he should be able to bring those claims that were previously raised and lost on direct appeal, arguing that his conviction and sentence were obtained in violation of the United States Constitution and the Utah Constitution. Kell's argument again fails under the plain language of the PCRA.

¶ 19 Section 78–35a–104 allows a convicted defendant to file a petition for post-conviction relief to vacate or modify a conviction or sentence on grounds that "the conviction was obtained or the sentence was imposed in violation of the United States Constitution or Utah Constitution." Utah Code Ann. § 78–35a–104(1)(a). This section is limited, however, by the procedural bars contained in sections 78–35a–106 and 78–35a–107. *Id.* § 78–35–104(1) (stating that a convicted defendant may file an action for post-conviction relief "[u]nless precluded by Section 78–35a–106 or 78–35a–107"). As discussed above, the claims that Kell presents were raised and lost on direct appeal and are precluded from being raised again under section 78–35a–106.

Therefore, Kell cannot bring them again in a post-conviction court.[7]

¶ 20 In summary, we conclude that Kell's claims that were previously raised and lost on direct appeal are procedurally barred. We therefore affirm the post-conviction court's dismissal of those claims.

### III. THE POST–CONVICTION COURT CORRECTLY DISMISSED KELL'S CLAIMS THAT COULD HAVE BEEN RAISED ON DIRECT APPEAL BUT WERE NOT

¶ 21 The PCRA provides that convicted defendants are not eligible for relief on claims that could have been raised on direct appeal but were not, unless the convicted defendant shows that the failure to bring the claims was due to ineffective assistance of counsel. Utah Code Ann. § 78–35a–106(1)(c), (2) (2002); *see also Pascual v. Carver*, 876 P.2d 364, 366 (Utah 1994) ("Allegations of error cannot be pursued for the first time by writ of habeas corpus if they could have been raised on direct appeal."). The post-conviction court dismissed two of Kell's claims as procedurally barred because they could have been raised on direct appeal but were not.[8] We affirm.

¶ 22 Kell admits that these claims could have been brought on direct appeal but attempts to avoid the procedural bar by asserting that the claims were not brought on direct appeal due to ineffective assistance of appellate counsel. The problem, however, is that Kell did not characterize these claims as claims for ineffective assistance of appellate counsel until his brief to this court. We addressed a similar issue in *Lafferty v. State*, 2007 UT 73, 175 P.3d 530. In *Lafferty*, claims that could have been brought on di-

---

**7.** Kell argues his position is supported by an Oregon Supreme Court decision, which concluded that a criminal trial held within a state prison violated the Oregon Constitution. *State v. Cavan*, 337 Or. 433, 98 P.3d 381, 389 (2004). Kell apparently argues that the decision by the Oregon Supreme Court mandates reversal of our prior holding that Kell's prison trial did not violate the United States Constitution or the Utah Constitution. *See Kell*, 2002 UT 106, ¶¶ 11–16, 61 P.3d 1019. This argument is without merit. Not only is the Oregon opinion distinguishable on its facts, but the Oregon court's conclusions

are not binding on this court. Indeed, because the Oregon court's conclusions were based on the Oregon Constitution, they do not dictate this court's conclusions about the Utah Constitution or the United States Constitution.

**8.** Claim 9 asserts that the trial court's death qualification of the jury violated Kell's constitutional rights. Claim 13(a) asserts that the trial court's jury instruction regarding reasonable doubt was constitutionally flawed.

rect appeal, but were not, were categorized by the petitioner as claims for ineffective assistance of counsel for the first time in a memorandum opposing summary judgment on the petition. *Id.* ¶ 46. We held that reconfiguring the claims as ineffective assistance of counsel claims for the first time in a memorandum opposing summary judgment was an "impermissible attempt to raise claims not raised" in the petition for post-conviction relief. *Id.*

¶ 23 Likewise, Kell's attempt to reconfigure his claims for relief as ineffective assistance of appellate counsel claims for the first time on appeal is an abuse of the PCRA and violates our pleading requirements. *See id.* ¶ 47; *see also* Utah R. Civ. P. 65C(c). A petitioner must set out all of his claims relating to the legality of his conviction or sentence in his petition for post-conviction relief and may not bring additional claims in later proceedings. *Lafferty,* 2007 UT 73, ¶ 47, 175 P.3d 530. Rule 65C does contain a good cause exception, which allows us to consider claims "that were not raised in a post-conviction petition when adherence to a procedural rule would come at the price of basic fairness." *Id.* In this case, however, Kell has not shown good cause as to why his ineffective assistance of appellate counsel claims were not raised in the Amended Petition. In fact, Kell offers no explanation at all for why the ineffective assistance of appellate counsel claims were not brought in the Amended Petition and does not even mention that he is bringing these claims for the first time on appeal.

¶ 24 Because these claims were not raised as ineffective assistance of appellate counsel claims before the post-conviction court and because Kell has not shown good cause for raising them now, we affirm the ruling of the post-conviction court and hold that the claims are procedurally barred under the PCRA.

¶ 25 Moreover, even if we were to view Kell's claims through the lens of ineffective assistance of appellate counsel, Kell would still not be entitled to relief. To demonstrate ineffective assistance of appellate counsel, a petitioner must

first show that his counsel was objectively unreasonable in failing to find arguable issues to appeal-that is, that counsel unreasonably failed to discover nonfrivolous issues and to file a merits brief raising them. If [a petitioner] succeeds in such a showing, he then has the burden of demonstrating prejudice. That is, he must show a reasonable probability that, but for his counsel's unreasonable failure to file a merits brief, he would have prevailed on his appeal.

*Smith v. Robbins,* 528 U.S. 259, 286, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000); *see also Benvenuto v. State,* 2007 UT 53, ¶ 24, 165 P.3d 1195. Kell fails to show that appellate counsel's failure to raise these claims was objectively unreasonable. Kell also fails to show that the failure was prejudicial, i.e., that the claims "would have likely resulted in reversal of his conviction." *Lafferty,* 2007 UT 73, ¶ 51, 175 P.3d 530. Thus, Kell's claims fail even if considered as claims of ineffective assistance of appellate counsel.

## IV. THE POST–CONVICTION COURT CORRECTLY GRANTED SUMMARY JUDGMENT TO THE STATE ON KELL'S CLAIMS OF INEFFECTIVE ASSISTANCE OF COUNSEL

¶ 26 Kell's Amended Petition raised numerous claims alleging ineffective assistance of trial counsel at the guilt phase, ineffective assistance of trial counsel at the penalty phase, and ineffective assistance of appellate counsel. We conclude that the post-conviction court correctly granted summary judgment to the State on these claims because Kell failed to provide evidence of counsel's deficient performance and failed to show prejudice.

¶ 27 The Supreme Court of the United States recognizes that a "Sixth Amendment right to counsel exists" and is necessary "to protect the fundamental right to a fair trial." *Strickland v. Washington,* 466 U.S. 668, 684, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The Sixth Amendment right to counsel includes the right to effective assistance of counsel. *Id.* at 686, 104 S.Ct. 2052. To warrant reversal of a conviction, a defendant alleging ineffective assistance of counsel

must establish both "that counsel's performance was deficient" and that "the deficient performance prejudiced the defense." *Id.* at 687, 104 S.Ct. 2052; *see also Lafferty v. State*, 2007 UT 73, ¶ 11, 175 P.3d 530.

▮▮▮▮ ¶ 28 To prove that counsel's performance was deficient, the petitioner "must show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688, 104 S.Ct. 2052. The objective standard of reasonableness is to be determined by "prevailing professional norms." *Id.* Standards such as those laid out by the American Bar Association "are guides to determining what is reasonable," but the Supreme Court has declined to adopt any detailed criteria defining ineffective assistance of counsel. *Id.* at 688–89, 104 S.Ct. 2052. Instead, counsel's performance must be evaluated "considering all the circumstances," with "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 688, 689, 104 S.Ct. 2052.

▮▮▮ ¶ 29 To prove that counsel's deficient performance prejudiced the defense, "the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. 2052. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

> When a defendant challenges a death sentence … the question is whether there is a reasonable probability that, absent the errors, the sentencer—including an appellate court, to the extent it independently reweighs the evidence—would have concluded that the balance of aggravating and mitigating circumstances did not warrant death.

*Id.* at 695, 104 S.Ct. 2052.

### A. Trial Counsel at Guilt Phase

▮▮▮ ¶ 30 Kell's Amended Petition raised numerous claims that trial counsel was ineffective during the guilt phase of the trial. Kell attempts to demonstrate ineffective assistance by going through each of his claims and stating that the failure of counsel to act in each situation was "per se deficient" and "per se caused prejudice" under the *Strickland* standard.

¶ 31 For sixteen of Kell's claims,[9] Kell apparently relies solely on a theory of per se deficiency and per se prejudice to illustrate counsel's ineffective performance. But Kell fails to cite to any authority to show that this court should presume counsel's failure to act was per se deficient or per se prejudicial. Additionally, Kell fails to point to any objective standard of reasonableness to show that counsel's performance was deficient and fails to show prejudice by illustrating how the outcome of the trial would have been different if not for counsel's alleged unprofessional errors.

¶ 32 The Supreme Court of the United States does recognize certain circumstances where ineffective assistance of counsel and prejudice are presumed. *United States v. Cronic*, 466 U.S. 648, 658, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984). Such circumstances include (1) when there is a complete denial of counsel, (2) when counsel "entirely fails to subject the prosecution's case to meaningful adversarial testing," and (3) when it is unlikely that any attorney could provide effective assistance[10] under the circumstances. *Id.* at

---

9. Claim 16(b) alleges that counsel should have considered alternative venues besides Salt Lake County. Claim 16(c) alleges that counsel's motion for a change of venue was not supported by empirical data. Claim 16(d) alleges that counsel did not adequately raise and brief issues related to holding Kell's trial in the CUCF. Claim 16(h) alleges that counsel did not adequately investigate and secure witnesses. Claim 16(i) alleges that counsel failed to adequately advise Kell about speaking about the case with individuals outside of counsel's presence. Claim 16(j) alleges that counsel failed to review and object to Kell's original prison transfer from Nevada.

Claim 16(k) alleges that counsel failed to investigate prosecutorial misconduct. Claims 16(*l*)-(q) allege that counsel failed to appropriately challenge five jurors for cause. Claim 16(r) alleges that counsel failed to object to improper opening statements made by the prosecution. Claim 16(s) alleges that counsel improperly advised Kell as to whether he should testify at trial. Claim 16(t) alleges that counsel failed to have bench conferences transcribed.

10. The Court noted *Powell v. Alabama*, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932), as an example of a case in which no attorney, even a

659–60, 104 S.Ct. 2039. The first and third circumstances are not raised here. With respect to the second circumstance, the Court in *Bell v. Cone* noted that failing to challenge the prosecution at specific points of its case is not considered an entire failure to subject the prosecution's case to meaningful adversarial testing and is insufficient to warrant a finding of presumed prejudice. 535 U.S. 685, 697, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002).

¶ 33 In this case, Kell's counsel did not entirely fail to challenge the prosecution's case; rather, counsel challenged the prosecution's case throughout the proceedings by filing numerous pretrial motions, examining witnesses at the preliminary hearing, questioning prospective jurors, and presenting extensive evidence during the guilt phase. Such actions by counsel do not constitute an entire failure to challenge the prosecution's case.

¶ 34 Because Kell failed to show that the circumstances surrounding his case justified a presumption of ineffective assistance of counsel, Kell cannot rely entirely on claims of per se deficiency and per se prejudice. Instead, Kell must meet both prongs of the *Strickland* test by illustrating how his trial counsel's performance at the guilt phase fell below an objective standard of reasonableness and how his trial counsel's alleged ineffective assistance at the guilt phase adversely influenced the outcome of his case. Kell failed to offer any evidence suggesting that his counsel's alleged failures meet these requirements. Thus, Kell failed to overcome the strong presumption that counsel's assistance was reasonable, and we reject Kell's claims of ineffective assistance of counsel at the guilt phase.

¶ 35 For the remainder of Kell's claims of ineffective assistance of counsel at the guilt phase,[11] Kell cites to several objective standards of reasonableness, including American Bar Association guidelines and case law, but fails to offer evidence to illustrate how counsel violated these standards. Additionally, Kell fails to show how he was prejudiced at trial by counsel's alleged deficient performance, apparently relying on an assertion of per se prejudice. Indeed, while Kell states that both prongs of the *Strickland* test are met, he offers no analysis to support this statement and fails to mention the element of prejudice at all.

¶ 36 Because the *Strickland* test requires that a defendant establish both deficiency of counsel and prejudice, Kell's claims of ineffective assistance of counsel at the guilt phase fail because Kell establishes neither. We accordingly affirm the post-conviction court's grant of summary judgment in favor of the State on these claims.

### B. Trial Counsel at Penalty Phase

¶ 37 Kell's Amended Petition raised five claims of ineffective assistance of trial counsel at the penalty phase. Again, Kell relies on assertions of per se deficiency and per se prejudice to satisfy the *Strickland* requirements. Like Kell's claims of ineffective assistance of counsel during the guilt phase of trial, Kell's claims of ineffective assistance at the penalty phase are not the type of claims where we presume ineffective assistance and prejudice as a matter of law.

¶ 38 For three of these claims,[12] Kell does not point to any specific instances in the

---

competent one, could have effectively assisted a client. In *Powell*, a judge appointed the entire bar to represent the defendants six days before trial. *Cronic*, 466 U.S. at 660, 104 S.Ct. 2039. On the day of trial, an out-of-state attorney appeared as counsel for defendants but was allowed no additional time to prepare for the case. *Id.* The court held that in such circumstances, "the likelihood that counsel could have performed as an effective adversary was so remote as to have made the trial inherently unfair." *Id.* at 660–61, 104 S.Ct. 2039.

11. Claim 13(b) alleges that counsel failed to object to the reasonable doubt instruction. Claim 15(a) alleges that counsel failed to present the

entire text of a letter written by Kell rather than the redacted version presented by the State. Claim 16(a) alleges that counsel failed to conduct an adequate pretrial investigation. Claim 16(e) alleges that counsel failed to seek interlocutory review of the adverse ruling on the issue of venue and trial in the CUCF. Claim 16(f) alleges that counsel failed to adequately research and brief pretrial motions. Claim 16(g) alleges that counsel failed to file pretrial motions to prevent the improper introduction of evidence.

12. Claim 17(a) alleges that counsel failed to object to improper opening statements of the prosecutor. Claim 17(d) alleges that counsel called witnesses who presented aggravating rather than

record to show that his counsel was ineffective. Instead, Kell makes only broad, bare allegations that counsel was ineffective. We reject these claims of ineffective assistance because Kell has not demonstrated how counsel's performance fell below an objective standard of reasonableness under *Strickland.* Additionally, even if we were to presume deficient performance, Kell fails to meet the second *Strickland* requirement of showing how the outcome of the penalty phase would have been different if not for counsel's allegedly deficient performance.

¶ 39 For Kell's remaining two claims of ineffective assistance of counsel at the penalty phase,[13] Kell provides specific instances of counsel's allegedly deficient performance but still fails to show how such actions fall below an objective standard of reasonableness. And again, Kell fails to establish prejudice by showing how the outcome of the penalty phase would have been different if not for counsel's allegedly deficient performance.

¶ 40 Accordingly, Kell's claims of ineffective assistance of counsel at the penalty phase of trial must fail, and we affirm the post-conviction court's grant of summary judgment in favor of the State on these claims.

### C. Appellate Counsel

¶ 41 Kell raises four claims of ineffective assistance of appellate counsel.[14] Again, Kell relies on claims of per se deficiency and per se prejudice to satisfy the *Strickland* standard for ineffective assistance of counsel.

¶ 42 The standard for evaluating whether appellate counsel is ineffective is the same *Strickland* standard used to determine whether trial counsel is ineffective. *Bruner*

*v. Carver,* 920 P.2d 1153, 1157 (Utah 1996). Thus, a criminal defendant must prove that appellate counsel's representation " 'fell below an objective standard of reasonable conduct and that the deficient performance prejudiced [him].' " *Lafferty v. State,* 2007 UT 73, ¶ 39, 175 P.3d 530 (alteration in original) (quoting *Bruner,* 920 P.2d at 1157). To show that appellate counsel was ineffective in failing to raise a claim, the petitioner "must show that the 'issue [was] obvious from the trial record and . . . probably would have resulted in reversal on appeal.' " *Id.* (alterations in original) (quoting *Taylor v. State,* 2007 UT 12, ¶ 16, 156 P.3d 739).

¶ 43 Like Kell's claims of ineffective assistance of trial counsel, Kell fails to show how appellate counsel's performance fell below an objective standard of reasonableness. Kell also fails to show prejudice. In only one of Kell's claims for ineffective assistance of appellate counsel does Kell even argue that his sentence would likely have been reversed on appeal if not for counsel's alleged unprofessional errors, but this conclusory statement is not supported with any analysis or authority. For the remainder of Kell's claims, Kell does not even argue that there probably would have been a reversal on appeal if not for counsel's alleged errors. Because Kell fails to show a probability of reversal on appeal, even assuming deficient performance of counsel, Kell's claims of ineffective assistance of appellate counsel must fail.

¶ 44 We affirm the judgment of the post-conviction court in granting summary judgment to the State on Kell's ineffective assistance of appellate counsel claims because Kell failed to show that his counsel was ineffective or that he was prejudiced by any allegedly deficient performance.

---

mitigating evidence. Claim 17(e) alleges that counsel failed to object to improper closing arguments from the prosecution.

13. Claim 17(b) alleges that counsel was ineffective for failing to make an opening statement. Claim 17(c) alleges that counsel failed to object to the presentation of victim impact testimony.

14. Claim 18(a) is a general allegation that Kell's conviction and sentence were the result of ineffective assistance of counsel. Claim 18(b) alleges that counsel failed to adequately raise and brief all issues on appeal. Claim 18(c) alleges counsel failed to raise the issue of the legality of Kell's prison transfer from Nevada to Utah. Claim 18(d) is a general allegation that absent the errors of appellate counsel, there is a reasonable likelihood that Kell would not have been convicted of aggravated murder and sentenced to death.

## V. THE POST–CONVICTION COURT ERRED BY SUA SPONTE GRANTING SUMMARY JUDGMENT ON TWO OF KELL'S CLAIMS, BUT THE ERROR IS HARMLESS

¶ 45 In the State's motion for dismissal and summary judgment, the State moved to dismiss Kell's Amended Petition. In support of its motion, the State filed a memorandum in support that spanned more than 100 pages and addressed each of Kell's claims individually. However, in an apparent oversight, the State failed to specifically address two of Kell's claims: claim 17(b) and claim 18(b).[15] The post-conviction court recognized the omissions, but concluded that it was "perhaps ... an oversight" by the State and entered summary judgment in favor of the State on these two claims.

¶ 46 It is error for a trial court to sua sponte grant summary judgment on an issue when neither party has sought summary judgment on that issue. However, on appeal, such sua sponte grants of summary judgment will not constitute grounds for reversal unless the losing party demonstrates that it was prejudiced by the grant of summary judgment.

¶ 47 Under rule 56 of the Utah Rules of Civil Procedure, either party may move for summary judgment in its favor "upon all or any part" of a claim. *Timm v. Dewsnup*, 851 P.2d 1178, 1180–81 (Utah 1993); *see also* Utah R. Civ. P. 56(a), (b). The scope of a summary judgment motion is determined by the moving party, who may move for judgment upon "all or less than all of the issues raised by the complaint and answer." *Timm*, 851 P.2d at 1181. Once the moving party has determined the scope of the motion for summary judgment, "rule 56 contemplates that a written motion shall be served on the opposite party setting forth with clarity the relief sought by the motion so that the opposite party may prepare to defend against it if he or she chooses to do so." *Id.* The court shall then grant summary judgment if "there is no genuine issue as to any material fact" and "the moving party is enti-

tled to judgment as a matter of law." Utah R. Civ. P. 56(c).

¶ 48 Because summary judgment is a drastic remedy, we generally require strict compliance with the rules governing summary judgment. *Timm*, 851 P.2d at 1181. However, a grant of summary judgment without strict compliance may be allowed when the error is shown to be harmless. *Id.* An error is considered harmless when it is " 'sufficiently inconsequential that we conclude there is no reasonable likelihood that the error affected the outcome of the proceedings.' " *Crookston v. Fire Ins. Exch.*, 817 P.2d 789, 796 (Utah 1991) (quoting *State v. Verde*, 770 P.2d 116, 120 (Utah 1989)).

¶ 49 Under the rules for summary judgment, only parties to the case may define the scope of a summary judgment motion. In this case, since neither party moved for summary judgment on claims 17(b) and 18(b) in accordance with rule 56, the court was not strictly complying with the procedural rules for summary judgment. The court therefore erred when it sua sponte entered summary judgment in favor of the State on the two claims. The proper course of action for the court would have been to notify the State of the apparent oversight. The State could have then filed an amended or additional motion to cover all of Kell's claims, and Kell would have had a chance to respond. Because we find that the court erred, we must now consider whether the court's sua sponte grant of summary judgment was harmless.

¶ 50 Kell addressed claim 18(b) in his memorandum in opposition to the State's motion, apparently unaware that the State had not requested judgment on this claim. Because Kell addressed this claim in his memorandum in opposition to summary judgment, Kell was able to properly defend his position on this claim in the same manner as if the State had requested summary judgment. Thus, there was no reasonable likelihood that, absent the post-conviction court's error, the outcome would have been different. Accordingly, we conclude that the post-

---

**15.** Claim 17(b) alleged that trial counsel was ineffective by failing to make an opening statement in the penalty phase. Claim 18(b) alleged that appellate counsel was ineffective by failing to adequately brief and raise relevant issues on appeal.

conviction court's sua sponte entry of summary judgment was harmless error with respect to this claim.

¶ 51 Kell did not, however, address claim 17(b) in his memorandum in opposition. On appeal, Kell noted the court's error in granting summary judgment to the State on this claim, but he failed to argue that the error was prejudicial. Kell had a chance on appeal to show that claim 17(b) would have withstood summary judgment, i.e., that trial counsel's actions were deficient and that the deficient performance was prejudicial, but Kell failed to do so. Additionally, upon our review of the record and applicable case law, we conclude that Kell could not have withstood summary judgment on this claim in any event. *See State v. Harry,* 873 P.2d 1149, 1154 (Utah Ct.App.1994) (holding that counsel's decision to forego an opening statement did not constitute ineffective assistance and that "[e]ven if … trial counsel forgot to deliver an opening statement, we would still conclude that such failure did not prejudice [the defendant]"). We therefore conclude that it was harmless error for the post-conviction court to grant summary judgment on claim 17(b).

¶ 52 Because we find that the post-conviction court's error in granting summary judgment to the State on claims 17(b) and 18(b) was harmless, we affirm the court's grant of summary judgment on these two claims.

## CONCLUSION

¶ 53 For the foregoing reasons, we conclude that the post-conviction court properly dismissed Kell's petition for post-conviction relief. Affirmed.

¶ 54 Chief Justice DURHAM, Associate Chief Justice DURRANT, Justice WILKINS, and Justice NEHRING concur in Justice PARRISH's opinion.