IN THE UTAH COURT OF APPEALS

----ooOoo----

| | | |
|---|---|---|
| State of Utah, | ) | OPINION |
| | ) | |
| Plaintiff and Appellee, | ) | Case No. 20090775-CA |
| | ) | |
| v. | ) | F I L E D |
| | ) | (December 6, 2012) |
| Gary Whitener Smith, | ) | |
| | ) | 2012 UT App 338 |
| Defendant and Appellant. | ) | |

-----

Fourth District, Nephi Department, 091600008
The Honorable Donald J. Eyre Jr.

Attorneys:      Michael D. Esplin and Ann P. Boyle, Provo, for Appellant
                   Mark L. Shurtleff and Kenneth A. Bronston, Salt Lake City, for Appellee

-----

Before Judges Thorne, McHugh, and Christiansen.

THORNE, Judge:

¶1      Gary Whitener Smith appeals from his conviction of multiple crimes, including aggravated robbery, criminal mischief, burglary, theft, possession of a dangerous weapon by a restricted person, burglary of a vehicle, possession of drug paraphernalia, and interfering with an arresting officer. We affirm.

BACKGROUND

¶2      On January 10, 2009, Mark and Cheryl Sudweeks drove out to examine their rural property and found that their dump truck had been moved to block the entrance

of their barn. They called 911 and then exited their vehicle to further investigate. Upon entering the barn they discovered a red truck that did not belong to them. They also found extensive damage to a bus that they kept parked in the barn. As they turned to leave, Mr. Sudweeks removed the keys to the dump truck to impede any intruder from leaving. At that point, Smith stepped out from inside the barn holding a machete over his head and demanded the keys to the dump truck. Once Smith retrieved the keys, he moved the dump truck from the entrance of the barn. Smith then got into the red truck and attempted to flee before getting stuck in the snow.

¶3     When two deputies arrived, they searched the barn and then followed a set of footprints to some brush where they found Smith. As the deputies secured Smith, they both detected the odor of marijuana emanating from him, and a search by one of the deputies revealed a small pipe that looked like a metal cigarette in Smith's pocket. There were ashes in the small pipe that smelled like marijuana. The deputies also found a meth pipe in the red truck. Smith was arrested and charged with eleven criminal counts that included aggravated robbery, criminal mischief, and burglary.

¶4     The case was tried on June 30, 2009. The district court assembled a jury pool that consisted of thirty individuals. During voir dire, the court asked the prospective jurors whether they had close relationships with other members of the jury pool that might cause them to give more or less weight to the opinion of someone else on the jury. Juror Nine responded affirmatively, and he informed the court that Juror Eight was his ecclesiastical leader but that he did not think it would make a difference in the case. Juror Eight indicated that there were numerous people in the courtroom that he knew but that none of those relationships would affect him.

¶5     Also during voir dire, Juror Twelve responded "no" on a jury questionnaire when asked whether she could weigh the evidence fairly and without prejudice. The questionnaire further asked if there were any other reasons why she could not be a fair and impartial juror in this case, and Juror Twelve explained that she did not know if teaching family home evening every Monday night at the Juab County Jail would be a problem. Because of these answers on the questionnaire, the prosecutor asked Juror Twelve whether she would be uncomfortable teaching at the Juab County Jail if Smith were found guilty. She said that she did not think so, and neither the court nor either counsel had any further questions for Juror Twelve.

¶6     Jurors Twelve, Nine, and Eight were empaneled. After a two-day trial, the jury found Smith guilty of aggravated robbery, criminal mischief, burglary, theft, possession

of a dangerous weapon by a restricted person, burglary of a vehicle, possession of drug paraphernalia, and interfering with an arresting officer. Smith now appeals.

ISSUES AND STANDARD OF REVIEW

¶7    Smith argues that trial counsel rendered ineffective assistance when counsel failed to ensure an impartial jury. Smith also argues that his counsel's trial performance "entirely fail[ed] to subject the prosecution's case to meaningful adversarial testing." *United States v. Cronic*, 466 U.S. 648, 659 (1984). Because Smith's ineffective assistance of counsel arguments are raised for the first time on appeal, they present "question[s] of law, which we review for correctness." *State v. Fowers*, 2011 UT App 383, ¶ 15, 265 P.3d 832 (internal quotation marks omitted).

ANALYSIS

I. Jury Selection Issues

¶8    Smith claims that his trial counsel rendered ineffective assistance when counsel failed to ensure an impartial jury. Smith argues that Juror Nine implied that he was biased when he stated that he valued the opinion of Juror Eight, who was his ecclesiastical leader; that Juror Eight had the potential to unduly influence many of the jury members because many of them were business associates or longtime acquaintances; and that Juror Twelve expressed actual bias when she stated on the jury questionnaire that she could not weigh the evidence fairly.

¶9    To succeed on a claim of ineffective assistance of counsel, Smith must prove that (1) his trial counsel "rendered deficient performance which fell below an objective standard of reasonable professional judgment, and (2) counsel's deficient performance prejudiced him." *State v. Chacon*, 962 P.2d 48, 50 (Utah 1998); *see also Strickland v. Washington*, 466 U.S. 668, 686–87 (1984). On the first prong, Smith must "identify specific acts or omissions that fell outside the wide range of professional assistance." *See Chacon*, 962 P.2d at 50. To establish the second prong, prejudice, Smith must "illustrate that, absent those acts or omissions, there is a reasonable probability of a more favorable result." *See id.* (internal quotation marks omitted); *see also Strickland*, 466 U.S. at 694. However, proof that Smith was prejudiced "must be a demonstrable reality and not a speculative matter." *See Chacon*, 962 P.2d at 50 (internal quotation marks omitted). If Smith "fails to establish either of these prongs, he cannot prevail on a claim

of ineffective assistance of counsel." *See State v. Sessions*, 2012 UT App 273, ¶ 14, 287 P.3d 497.

¶10    During voir dire, the district court asked the prospective jurors whether they had close relationships with other members of the jury pool which could cause them to give more or less weight to the opinion of anyone else that might serve on the jury with them. Jurors Eight and Nine responded to the district court's question as follows:

> [Juror Nine]: Well, [Juror Eight] is my bishop, so I do value his opinion, but *I don't think it would really make a difference that way in this case*.
>
> [District Court]: Okay. So [Juror Eight] is your ecclesiastical leader, but you don't—although you value his opinion, you think you could—
>
> [Juror Eight]: He never listens to me.
>
> [District Court]: Okay, anyone else? How about you, [Juror Eight]?
>
> [Juror Eight]: There's plenty in this room that either I associate with through my business or been long time acquaintances, lived—growing up and living in this community.
>
> [District Court]: Anyone that have a strong relationship that you come together socially or anything?
>
> [Juror Eight]: No, not really, yes.
>
> [District Court]: You don't think there [is] any relationship such that—
>
> [Juror Eight]: *Would affect me, no, sir*.
>
> [District Court]: Okay.

(Emphasis added.)  Neither side's counsel questioned Juror Eight or Juror Nine further.

¶11 Smith now claims that the jurors' answers indicated at least the potential of bias and that his trial counsel rendered ineffective assistance by not striking them. However, we presume that counsel acted effectively unless Smith can show "that a prospective juror expressed bias so strong or unequivocal that no plausible countervailing subjective preference could justify failure to remove that juror." *See State v. Litherland*, 2000 UT 76, ¶ 25, 12 P.3d 92. Here, upon questioning by the district court, both jurors stated that their relationships with each other or with other members of the jury would not make a difference. Although the jurors' answers could have been more clear and definite, they did not indicate the "strong or unequivocal" bias required before we will second-guess trial counsel's decisions. *See id.* Therefore, Smith has failed to overcome the presumption that trial counsel was effective in not striking Juror Eight and Juror Nine.

¶12 Smith next claims that Juror Twelve demonstrated bias when she answered questions 19 thru 21 of the jury questionnaire form in the following manner:

> 19. Do you feel that you can weigh the evidence fairly and without prejudice? <u>No</u>
>
> 20. The court will provide instructions to guide the trial. Will you follow them? <u>Yes</u>
>
> 21. Are there any other reasons why you could not be a fair and impartial juror in this case? ___ Please explain: <u>I do teach [family home evening] every Monday night at the Juab Co. Jail. I don't know if that would be a problem in this case.</u>

In light of these answers, the State asked the court for further questioning of Juror Twelve in chambers. The State asked Juror Twelve, "[I]f you sat on this jury and the evidence was such that you thought that he was guilty and you found him guilty, would that make you uncomfortable out there at the jail working with the people that you work with?" Juror Twelve responded, "I don't think so." The court then asked both counsel if they had any further questions, and they both indicated that they did not.

¶13 Smith argues that Juror Twelve expressed actual bias when she stated on the jury questionnaire that she could not "weigh the evidence fairly and without prejudice." However, one reasonable interpretation of Juror Twelve's complete response to the questionnaire is that her ability to weigh the evidence fairly could be affected by the

weekly volunteer service that she provided at the Juab County Jail, as she explained in her answer to question 21.[1]  Interpreted this way, Juror Twelve's expression of bias was not "so strong or unequivocal that no plausible countervailing subjective preference could justify failure to remove that juror." *Litherland*, 2000 UT 76, ¶ 25.  To the contrary, Juror Twelve's volunteer work at the jail may well have suggested to counsel that Juror Twelve would be favorably predisposed to the defense.  Under this scenario, trial counsel's decision to not challenge Juror Twelve would represent trial strategy and, thus, effective assistance of counsel.  *See State v. Tennyson*, 850 P.2d 461, 468 (Utah Ct. App. 1993) ("[A]n ineffective assistance claim succeeds only when no conceivable legitimate tactic or strategy can be surmised from counsel's actions.").

¶14    In sum, we reject Smith's claims that trial counsel rendered ineffective assistance during jury selection.  Jurors Eight and Nine ultimately indicated that they would not be affected by the relationships they disclosed.  Juror Twelve's indication of an inability to weigh the evidence fairly could reasonably have been interpreted as an inartful attempt to disclose her weekly service at the Juab County Jail.[2]

## II. Other Claims of Ineffective Assistance of Counsel

¶15    Smith additionally argues that there are "certain circumstances where ineffective assistance of counsel and prejudice are presumed." *See Kell v. State*, 2008 UT 62, ¶ 32, 194 P.3d 913; *see also United States v. Cronic*, 466 U.S. 648, 659 (1984).  One of those circumstances is when counsel "entirely fails to subject the prosecution's case to meaningful adversarial testing." *See Cronic*, 466 U.S. at 659.  Smith argues that his trial counsel entirely failed to challenge the State's case because counsel (1) failed to object when the deputy linked Smith to the truck found in the barn; (2) permitted the deputy to testify, without objection, that the pipe located in the truck was a meth pipe and that

---

[1]We note that the small space provided for answering question 19 is consistent with a "yes" or "no" answer and that the only space provided by the jury questionnaire to explain an answer after question 19 is the one offered in question 21.

[2]Smith also argues that the district court failed to ensure his right to a fair and impartial jury. *See generally State v. King*, 2006 UT 3, ¶ 19, 131 P.3d 202 ("[A] trial court may nevertheless have a duty to further investigate or remove [a] juror sua sponte if he or she has express[ed] a bias or conflict of interest so strong or unequivocal as to inevitably taint the trial process." (internal quotation marks omitted)).  However, for the reasons explained above, none of the jurors expressed bias so strong or unequivocal as to require the district court to act.

the metal cigarette found in Smith's pocket contained marijuana; and (3) conceded partial guilt during closing arguments even though Smith had pleaded not guilty.

¶16    In *Kell v. State*, 2008 UT 62, 194 P.3d 913, the defendant argued on appeal that sixteen alleged trial defects demonstrated trial counsel's complete failure to challenge the prosecution's case. *See id.* ¶ 37. However, the Utah Supreme Court held that counsel did not entirely fail to challenge the prosecution's case where counsel filed pretrial motions, examined witnesses, questioned prospective jurors, and presented extensive evidence during the guilt phase. *See id.* ¶ 33; *see also Cooks v. Ward*, 165 F.3d 1283, 1296 (10th Cir. 1998) (holding that counsel adequately challenged the prosecution's case by being present in the courtroom, conducting limited cross-examination, making evidentiary objections, and delivering a closing argument).

¶17    Likewise, we conclude that Smith's trial counsel did not entirely fail to subject the State's case to a meaningful test. Smith argues only that his trial counsel failed to object on several evidentiary issues and conceded Smith's partial guilt in closing argument. However, "failing to challenge the prosecution at specific points of its case is not considered an entire failure to subject the prosecution's case to meaningful adversarial testing and is insufficient to warrant a finding of presumed prejudice." *Kell*, 2008 UT 62, ¶ 32 (citing *Bell v. Cone*, 535 U.S. 685, 697 (2002)). Our cursory review of the record indicates that counsel participated in jury selection, delivered opening and closing arguments, objected during trial, and cross-examined the State's witnesses. Thus, we conclude that Smith's counsel did not "entirely fail[] to subject the prosecution's case to meaningful adversarial testing." *See Cronic*, 466 U.S. at 659.

¶18    Because Smith has failed to show that trial counsel's performance meets one of the circumstances in which ineffective assistance of counsel and prejudice are presumed, we will not disturb Smith's convictions on ineffective assistance of counsel grounds unless Smith can demonstrate that trial counsel provided deficient performance and that such deficient performance prejudiced him. *See Kell*, 2008 UT 62, ¶ 34 (stating that since the defendant failed to demonstrate that the circumstances justified a presumption of ineffective assistance, he was required to meet both prongs under *Strickland*). However, Smith does not provide any argument that the alleged trial defects he identifies meet those requirements. Therefore, we do not individually review these defects for ineffective assistance of counsel.[3]

---

[3]Smith also argues that all of his claimed errors combined establish cumulative error, requiring Smith's convictions to be reversed. Because we have found that none of

(continued...)

CONCLUSION

¶19   Smith has failed to establish that trial counsel rendered ineffective assistance of counsel during jury selection or that counsel's performance "entirely fail[ed] to subject the prosecution's case to meaningful adversarial testing." *Kell*, 2008 UT 62, ¶ 32 (internal quotation marks omitted). Accordingly, we affirm Smith's convictions.

_____
William A. Thorne Jr., Judge

-----

¶20   WE CONCUR:

_____
Carolyn B. McHugh, Judge

_____
Michele M. Christiansen, Judge

---

[3](...continued)
Smith's arguments of ineffective assistance of counsel are meritorious, we do not address the cumulative error doctrine. *See State v. Gonzales*, 2005 UT 72, ¶ 74, 125 P.3d 878 (stating that if the claims are found on appeal to not constitute error, the cumulative error doctrine will not be applied).